United States District Court
Southern District of Texas

**ENTERED**

June 11, 2026

Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

ERFAN RAHIMZADEH,           §
 *Petitioner,*         §
        §
        §
v.                          §  Civil No. 5:26-cv-00154
        §
KRISTI NOEM,                §
TODD LYONS,                 §
MIGUEL VERGARA,             §
and WARDEN,                 §
 *Respondents.*        §

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned for a hearing and report and recommendation pursuant to 28 U.S.C. § 636(b)(1). For the following reasons, the undersigned respectfully **RECOMMENDS** that Petitioner's Petition be **GRANTED** and Respondents' Motion to Dismiss be **DENIED**. It is further **RECOMMENDED** that the District Court order the Department of Homeland Security ("DHS") and Immigration and Customs Enforcement ("ICE") to release Petitioner immediately with appropriate terms of supervision determined by DHS in its discretion.

### *Background*

Petitioner is an Iranian citizen currently detained by ICE. Dkt. No. 1 at ¶¶ 7, 12; Dkt. No. 11 at 1. His mother and sister live in the United States, residing in Virginia, while his father was previously removed to Iran. May 27 Hr'g [hereinafter Hr'g] at 10:49. This case began when Petitioner was detained while crossing into the United States without inspection near Eagle Pass, Texas, on or about December 24, 2022. Dkt. No. 11 at 3. Consequently, Petitioner was convicted

1

in the Western District of Texas of failure to comply with report documents under 19 U.S.C. § 1459 on November 7, 2023, and sentenced to ten months' imprisonment. *Id.*

An Immigration Judge ("IJ") denied Petitioner's applications for asylum, withholding of removal, and withholding under the Convention Against Torture ("CAT") and ordered Petitioner removed to Iran on November 26, 2024. Dkt. No. 1 at ¶ 13; Dkt. No. 11 at 4. Petitioner timely appealed the IJ's decision to the Board of Immigration Appeals ("BIA"), and the BIA dismissed his appeal on June 18, 2025. Dkt. No. 1 at ¶ 14; Dkt. No. 11 at 4. Thus, Petitioner's position is that his removal order became administratively final on June 18, 2025. Dkt. No. 1 at ¶ 14.[1] Petitioner did not seek judicial review of this decision by the Fifth Circuit.

Respondents advise that from July 15 to September 3, 2025, ICE Enforcement and Removal Operations ("ERO") sought assistance from Petitioner to obtain travel documents from the Iranian consulate. Dkt. No. 11 at 4–5; Dkt. No. 11-1 at ¶¶ 13–15. On July 24, 2025, ICE ERO spoke with Petitioner's attorney at the time, and his attorney indicated that she would advise Petitioner to sign a Form I-229(a). *Id.* at ¶ 14. However, ICE ERO served Petitioner with a copy of Form I-229(a) (Warning for Failure to Depart) on September 3, 2025, and Petitioner refused to sign the form. Dkt. No. 11 at 5; Hr'g at 9:54. Rather, Petitioner states that he "merely directed Respondents to speak to his attorney . . . ." Dkt. No. 12 at 3 (citing Dkt. No. 11-1 at 2). It is therefore unclear whether Petitioner had the opportunity to confer with his attorney prior to being presented with Form I-229(a). Hr'g at 10:03–10:04. Regardless, Respondents contend that Petitioner's refusal to sign the form delayed his potential removal to Iran and caused his removal

---

[1] Respondents have presented contradictory arguments regarding when Petitioner's Final Order of Removal became administratively final. In their Motion to Dismiss, Respondents agreed that the Final Order of Removal became administratively final on June 18, 2025. Dkt. No. 11 at 4. However, at the May 27 Hearing, Respondents initially argued that Petitioner's Final Order of Removal was not administratively final until July 29, 2025. Hr'g at 9:41–42. Even after correcting the date of the BIA's dismissal of Petitioner's appeal on the record, Hr'g at 9:43–44; Pet'r's Ex. 4, Respondents maintained that the order of removal was not administratively final until the time for Petitioner to appeal to the Fifth Circuit expired. Hr'g at 9:45. The undersigned addresses these arguments in greater detail below.

period to be prolonged through the beginning of the Iran-United States conflict in February 2026. Hr'g at 9:54–55.

Petitioner argues that this refusal to sign has no practical effect because it merely informs detainees of the consequences of failure to cooperate with removal efforts.  Hr'g at 9:55–56. Moreover, there is no indication that ERO renewed their requests for Petitioner to sign Form I-229(a) after speaking with his attorney.  Dkt. No. 12 at 3.  However, ERO submitted a travel document request to Iran's government on behalf of Petitioner on October 16, 2025, and that request has gone unanswered to date.  Dkt. No. 11 at 5.  The parties agree that Petitioner has been cooperative with the Government's removal efforts since October 16, 2025.  Hr'g at 10:02. Respondents further advise that ICE has conducted two administrative custody reviews pursuant to 8 C.F.R. § 241.4: a ninety-day custody review on September 24, 2025, and a 180-day custody review on January 6, 2026.  *Id.*  ICE recommended Petitioner's continued detention following each administrative custody review.  *Id.*

In a formal declaration filed with Respondents' most recent advisory, ICE ERO Officer Jose Aguilar attests that ERO re-submitted a travel document request regarding Petitioner on March 3, 2026, and was notified "that all commercial and charter removals to Iran are currently paused and will resume once the Iranian airspace returns to normal operating procedures."  Dkt. No. 18-1 at ¶ 5.  ERO received the same response to a request for an update regarding Petitioner's travel documents on May 21, 2026.  *Id.* at ¶ 7.  In the meantime, ICE also completed a 270-day post-order custody review on April 25, 2026.  *Id.* at ¶ 6.

Petitioner filed his petition for writ of habeas corpus in the instant case, challenging the constitutionality of his continued detention by ICE, on January 28, 2026.  Dkt. No. 1.  He remains in detention at La Salle County Regional Detention Center in Pearsall, Texas, to date.  Dkt. No. 1

at ¶ 2; Hr'g at 9:39. At the time of this Report and Recommendation, Petitioner has been in custody for approximately three years and six months since he was originally apprehended near Eagle Pass, Texas. *See* Dkt. No. 11 at 3. This timeframe includes the year, nearly to the day, that has elapsed since the BIA dismissed his appeal and his order of removal became administratively final on June 18, 2025. Dkt. No. 1 at ¶ 14. Petitioner seeks relief under *Zadvydas v. Davis*, arguing that "[g]iven the absence of a confirmed travel document or flight and the operational and diplomatic barriers to repatriation, there is no significant likelihood that Petitioner will be removed to Iran in the reasonably foreseeable future." Dkt. No. 1 at ¶ 19.

### *Legal Standards*

Where Respondents have filed a Motion to Dismiss but attached evidentiary exhibits, as in this case, the Court construes such a motion as a Motion for Summary Judgment. *Tuley v. Heyd*, 482 F.2d 590, 592 (5th Cir. 1973) ("A motion to dismiss for failure to state a claim upon which relief can be granted must be treated as a motion for summary judgment if matters outside the pleadings are considered."). Accordingly, the undersigned analyzes Respondents' Motion to Dismiss, Dkt. No. 11, as a motion for summary judgment.

Summary judgment is appropriate where the movant shows that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases." *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000). To meet its burden, "the moving party must inform the Court of the basis for the motion and identify those portions of the record which demonstrate the absence of a genuine dispute of material fact *and* the appropriateness of judgment as a matter of law." *Villanueva v. Tate*, 801 F. Supp. 3d 689, 697 (S.D. Tex. 2025). A dispute of material fact is genuine

"if the evidence is such at a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Courts considering a motion for summary judgment construe "all facts and inferences in the light most favorable to the nonmoving party." *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012) (quoting *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010)).

A petitioner may apply for a writ of habeas corpus claiming that "[h]e is in custody under or by color of the authority of the United States" or "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(1), (3). Generally, when an alien is ordered removed, they must be removed within ninety days. 8 U.S.C. § 1231(a)(1)(A). The alien shall be detained during this removal period. 8 U.S.C. § 1231(a)(2)(A). If an alien may not be removed to their country of origin, they may be removed to any country to which they have ties or any country whose government will accept them into the country's territory. 8 U.S.C. § 1231(b)(1)(C). The removal period begins on the latest of three dates: the date the order of removal becomes administratively final, the date of a court's final order staying removal, or the date the alien is released from non-immigration detention. 8 U.S.C. § 1231(a)(1)(B). The removal period may be extended if the detainee "fails to make a timely application for travel documents or acts to prevent his removal." *Johnson v. Guzman Chavez*, 594 U.S. 523, 528 (2021) (citing 8 U.S.C. § 1231(a)(1)(C)). Additionally, an alien may be detained beyond the removal period if there is serious reason to believe they are a danger to the community or a threat to national security. 8 U.S.C. § 1231(a)(6), (b)(3)(B).

Regardless, the Supreme Court has specified that "the statute, read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite

detention." *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). Accordingly, the proper inquiry is whether a petitioner's removal is reasonably foreseeable. *See id.* at 699. A six-month period of detention is presumptively reasonable. *Id.* at 701. After this six-month period has passed, if the petitioner "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* If removal is not reasonably foreseeable, detention is no longer authorized by statute. *Id.* at 699. Because habeas corpus cases are civil in nature, the burden of proof is by a preponderance of the evidence. *Villanueva*, 801 F. Supp. 3d at 696.

### *Discussion*

As an initial matter, Respondents challenge the Court's jurisdiction to adjudicate Petitioner's claims. Dkt. No. 11 at 2. Respondent is correct that the Court does not have jurisdiction to directly review a final order of removal. *See Andrade v. Gonzales*, 459 F.3d 538, 544 (5th Cir. 2006). However, the Court "retains jurisdiction over pure questions of law," such as the constitutionality of Petitioner's continued detention pending his removal. *See id.* In fact, "the primary federal habeas corpus statute, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear these cases." *Zadvydas*, 533 U.S. at 687; *see also Trejo v. Warden of ERO El Paso East Montana*, 807 F. Supp. 3d 697, 703 (W.D. Tex. 2025) ("Although several sections of the INA curtail the jurisdiction of federal district courts in immigration [proceedings] . . . none of these jurisdiction stripping provisions bar [the courts] from hearing a habeas petitioner's challenge to their detention, as opposed to their deportability."). Therefore, because Petitioner is challenging the lawfulness of his ongoing detention rather than the removal order itself, this Court retains jurisdiction to consider his claims.

Having established its jurisdiction to hear Petitioner's claims, the Court proceeds to evaluate the petition for writ of habeas corpus and Respondents' Motion for Summary Judgment. The parties have not outlined any genuine dispute of material fact. Accordingly, the undersigned will evaluate whether Respondents are entitled to judgment as a matter of law under the *Zadvydas* framework. The undersigned finds that Respondents are not entitled to judgment as a matter of law. Rather, Petitioner has shown that he is not significantly likely to be removed in the reasonably foreseeable future, and Respondents have failed to rebut this showing or provide other sufficient justification for Petitioner's continued detention.

First, Petitioner has met his burden to show that there is no significant likelihood that he will be removed in the reasonably foreseeable future. *Zadvydas*, 533 U.S. at 701. Mere conclusory statements alone are insufficient to meet this burden. *See Andrade*, 459 F.3d at 543–44. However, Petitioner has presented more than conclusory statements here. Indeed, Petitioner states that both the unanswered request for travel documents to Iran and the current conflict and breakdown of diplomatic relations between Iran and the United States render his removal unlikely to occur in the reasonably foreseeable future. Dkt. No. 1 at ¶ 19. Thus, the undersigned concludes that Petitioner has met his initial burden under *Zadvydas*. Accordingly, the burden shifts to Respondents to present rebuttal evidence showing that there is a significant likelihood that Petitioner will be removed in the reasonably foreseeable future. *Zadvydas*, 533 U.S. at 701.

Respondents first argue that the petition was premature and posit that Petitioner's order of removal did not become administratively final until the time for Petitioner to appeal to the Fifth Circuit had elapsed. Hr'g at 9:41–45. This argument is unavailing. First, an order of removal becomes administratively final "once the BIA has reviewed the order (or the time for seeking the BIA's review has expired), [at which point] DHS is free to remove the alien *unless* a court issues

a stay." *Johnson*, 594 U.S. at 534–35.  Second, and more to the point, "nothing in *Zadvydas*

precludes a challenge to detention before the presumptively constitutional time period has elapsed.

*Zadvydas* specifically holds that continued detention is proper only when the noncitizen's final

removal is reasonably foreseeable." *Villanueva*, 801 F. Supp. 3d at 702.  This is because "the

presumption of constitutionality during that six-month period is rebuttable." *Id.* at 703.  Thus,

even if Respondents were correct that the presumptively reasonable period of six months had not

expired when Petitioner filed his petition, that would not preclude the Court from evaluating the

constitutionality of his indefinite detention.

Next, Respondents argue that Petitioner failed to cooperate in procuring travel documents,

tolling the removal period.  Dkt. No. 11 at 2; *see* 8 U.S.C. § 1231(a)(1)(C).  Specifically,

Respondents contend that Petitioner's refusal to sign the I-229(a) form constitutes non-cooperation

with procuring travel documents, rendering his ongoing detention reasonable under 8 U.S.C.

§ 1231.  "There is limited precedent on the quantum of evidence necessary to establish lack of

cooperation under § 1231." *Lyimo v. Price*, EP-16-CV-00457-FM, 2017 WL 8161003, at *2 (W.D.

Tex. Aug. 4, 2017).  However, the Form I-229(a) is not a vehicle for procuring travel documents,

but rather "reiterates the general requirement that a noncitizen subject to a final order of removal

be willing to assist in his removal." *Morales Perez v. Mullin*, Civil Action No. 4:26-cv-03389,

2026 WL 1349072, at *2 (S.D. Tex. May 14, 2026).  Thus, although numerous refusals to sign

Form I-229(a) and "consistently refus[ing] to assist in obtaining travel documents" may toll the

removal period under § 1231, *see Lyimo*, 2017 WL 8161003, at *3, a single refusal to sign Form

I-229(a) before consulting an attorney, followed by consistent cooperation with removal efforts, is

insufficient to constitute bad faith under 8 U.S.C. § 1231(a)(1)(C).  Moreover, to the extent the

Respondents argue that Petitioner failed to cooperate, they acknowledge that it is unclear whether

8

Petitioner or his attorney was the reason for the alleged noncooperation.  Hr'g at 10:03–10:04.  Thus, the allegations that Petitioner failed to cooperate with removal efforts in good faith rest on tenuous grounds indeed.  The undersigned finds these circumstances insufficient to show that Petitioner's removal period was tolled pursuant to 8 U.S.C. § 1231(a)(1)(C).

Finally, Respondents urge the Court to evaluate the probability of Petitioner's removal at the time the petition was filed, intervening events notwithstanding.  Hr'g at 9:52–53, 10:26.  Such an approach would be inconsistent with *Zadvydas* and other governing legal standards.  For one thing, "habeas is not backward-looking."  *Ladak v. Noem*, 814 F. Supp. 3d 712, 724 (N.D. Tex. 2025).  The question is whether, currently, Petitioner's removal is reasonably foreseeable.  *Cf. id.* at 727 (holding that changed circumstances can justify an alien's re-detention if they render a new removal attempt "more than a shot in the dark").  Thus, it is reasonable to conclude that the intervening dissolution of diplomatic relations between Iran and the United States will come to bear on the Court's evaluation of whether there is a significant likelihood of Petitioner's removal to Iran in the reasonably foreseeable future.

Even so, Respondents argue that Petitioner is likely to be removed in the reasonably foreseeable future.  Namely, Respondents claim that there is no indication that Iran will not approve Petitioner's travel documents, and that the only issue affecting his removal is whether flights to Iran will resume soon.  Dkt. No. 18 at 2; Hr'g at 10:25, 10:29; *see also* Dkt. No. 18-1 at ¶ 8 ("*Once travel documents are secured and removal flights resume to Iran,* there is a significant likelihood of removal in the reasonably foreseeable future." (emphasis added)).  Respondents, however, could provide no insight or estimate regarding when said flights to Iran might resume.  *See* Hr'g at 10:25–26.  Thus, the condition necessary to render Petitioner's removal significantly likely, namely the resumption of flights to Iran, is not reasonably foreseeable.  The Court is not

convinced that removal premised on an unforeseeable condition can itself be reasonably foreseeable.

Additionally, Respondents are not pursuing Petitioner's removal to a third country because the IJ's order specifies his removal to Iran.  Hr'g at 10:41–42; *see also* Dkt. No. 11-4 at 26.  If Respondents were able to show viable third-country options for Petitioner's removal, it is possible that his removal would be more reasonably foreseeable.  *See Ladak*, 814 F. Supp. 3d at 730 (holding that the petitioner was reasonably likely to be removed due to a "new and very real potential for third-country removal").  That is not the case here.

Nor have Respondents provided any special circumstances that would justify Petitioner's indefinite detention.  *See Zadvydas*, 633 U.S. at 691 ("In cases in which preventive detention is of potentially *indefinite* duration, we have also demanded that the dangerousness rationale be accompanied by some other special circumstance, such as mental illness, that helps create the danger.").  Here, the only criminal history supported by the record is Petitioner's illegal entry conviction.  Moreover, Respondents conceded that there is no evidence that Petitioner would be a danger to the community—there is no indication that he has criminal history prior to his entry to the United States or that he has any ties to criminal or terrorist organizations.  Hr'g at 10:53–54.  Given these facts, the record does not support a finding that special circumstances allow Petitioner to be detained indefinitely pending his removal to Iran, an event that presently dwells in the land of speculation given the breakdown of diplomatic relations between Iran and the United States.

For these reasons, the undersigned finds that Respondents have failed to meet their burden to rebut Petitioner's showing that there is no significant likelihood that he will be removed in the reasonably foreseeable future.  Thus, Respondents have not shown that they are entitled to judgment as a matter of law, and their Motion to Dismiss, construed as a motion for summary

judgment, must fail.  Because removal is not reasonably foreseeable, Petitioner's detention is "unreasonable and no longer authorized by statute." *Zadvydas*, 533 U.S. at 699–700.  Accordingly, Petitioner should be released, subject to any terms of supervised release that are deemed appropriate by DHS.  *Id.* at 700.

### *Conclusion*

For the foregoing reasons, the undersigned respectfully **RECOMMENDS** that Petitioner's Petition for Writ of Habeas Corpus be **GRANTED**, that Respondents' Motion to Dismiss be **DENIED**, and that the District Court order Petitioner's immediate release under DHS supervision. The undersigned further **RECOMMENDS** that the District Court's order include any additional conditions pertaining to Petitioner's release that it finds necessary to effectuate the order.

IT IS SO RECOMMENDED

Signed this June 11, 2026, in Laredo, Texas.

Diana Song Quiroga
United States Magistrate Judge

### *Warnings*

The parties may file objections to this Report and Recommendation, unless they waive the right to do so.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections. *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982) (en banc)).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after being served with a copy of the Report— or the party's waiver of the right to do so—shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations and, except upon grounds of plain error, shall bar the party from appellate review of proposed factual findings and legal conclusions accepted by the District Court to which no objections were filed.  *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn,* 474 U.S. 140, 150-53 (1985); *Douglass v. United Services Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).